UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR PEREZ, JR., | No. 2:23-cv-1245-DC-SCR |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability benefits under the Medicare Qualified Government Employee provisions of Title XVII of the Social Security Act ("Act"), and the Supplemental Security Income provisions of Title XVI of the Act. For the reasons that follow, the undersigned recommends that Plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

## I. BACKGROUND

Plaintiff applied for Medicare Qualified Government Employee ("MQGE") benefits and supplemental security income ("SSI") on February 11, 2021. ECF No. 8-1, Administrative Record ("AR") 37. In the years leading up to Plaintiff's alleged disability, he worked in construction and as a water meter installer. Plaintiff alleged a disability onset date of February 9,

2019, the day he fell off a flatbed truck and sustained spinal and hip injuries at work. AR 37, 39. The applications were disapproved initially and on reconsideration. AR 108-09, 156-57.

On May 19, 2022, administrative law judge ("ALJ") Carol Eckersen presided over a telephonic hearing on Plaintiff's challenge to the disapprovals. AR 34-69 (transcript). Plaintiff was represented by counsel at the hearing. Plaintiff testified at the hearing and was questioned by both the ALJ and his own counsel. A Vocational Expert ("VE") also testified that a person with hypothetical limitations described by the ALJ could not return to Plaintiff's past work, but that someone with those limitations could perform other jobs in the national economy. AR 66-67.

On August 3, 2022, the ALJ issued a decision finding plaintiff "not disabled" under the MQGE provisions of Title XVIII of the Act and the SSI benefits provisions of Title XVI of the Act. AR 13-33 (decision). The Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-4 (decision).

Plaintiff filed this action on June 28, 2023. ECF No. 1. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 11 (Plaintiff's summary judgment motion), 16 (Commissioner's summary judgment motion), 17 (Plaintiff's reply). This action was reassigned to the undersigned on August 6, 2024.

## II. STANDARDS OF REVIEW

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Substantial evidence "means—and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation and citation omitted). "While inferences from the record can constitute substantial evidence, only

1 | those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The court will not reverse an erroneous decision if the error was harmless. In this context, an error is harmless only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### III. SUBSTANTIVE LAW

A claimant is "disabled" if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id*., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n. 5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

////

////

4

# IV. THE ALJ's DECISION

The ALJ made the following findings:

1. [Step 1] The claimant meets the insured status requirements of the Social Security Act for MQGE purposes through December 31, 2024 (AR 19).

2. [Step 1] The claimant has not engaged in substantial gainful activity since February 11, 2019, the alleged onset date (AR 19).

3. [Step 2] The claimant has the following severe impairments: cervical disc disease, lumbar disc disease, thoracic disc disease, left knee ligament tears, bilateral hip osteoarthritis and right clavicle fracture status post open reduction internal fixation (AR 19).

The claimant also has non-severe impairments of right finger chip fracture, benign epididymis cyst, bilateral median neuropathy and obesity, which have not resulted in more than minimal functional limitations for a continuous period of 12 months or more. However, there is insufficient evidence to establish the claimant's non-medical determinable impairments of fibromyalgia and depressive Disorder (AR 19).

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (AR 20).

5. [Step 4] That the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: the claimant can lift and carry 25 pounds occasionally and frequently. He can sit, stand or walk for 6 hours in an 8-hour workday. He can occasionally climb ladders, ropes or scaffolds. He can frequently climb ramps and stairs. He can frequently balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to extreme cold, vibration and work hazards. He is unable to reach overhead with the dominant right upper extremity. (AR 20-21).

6. [Step 4] The claimant is unable to perform any past relevant work (AR 25).

7. [Preparation for Step 5] The claimant was 43 years old on the alleged onset date and is defined as a younger individual, has a limited education (AR 25).

8. [Preparation for Step 5] Transferability of job skills is not material to the determination of disability (AR 25).

9. [Step 5] Considering the claimant's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that the claimant can perform, particularly the jobs of office helper, routing clerk, and cashier II (AR 25-26).

The claimant has not been under a disability, as defined in the Social Security Act, from February 11, 2019 through the date of the ALJ's decision (AR 26).

## V.  ANALYSIS

Plaintiff alleges that the ALJ committed reversible error by crafting an RFC that: (1) did not properly evaluate medical opinion evidence; and (2) improperly discredited Plaintiff's statements about the severity of his symptoms.  The undersigned reviews the position Plaintiff took at the ALJ hearing and the ALJ's explanation of Plaintiff's RFC before engaging in the legal analysis.

### A.  **The ALJ Hearing**

At the hearing before the ALJ, Plaintiff argued, through counsel, that Plaintiff (1) could not perform even sedentary unskilled work, (2) would be absent from work at least three days per month, and (3) would need frequent, unscheduled breaks.  AR 40.  Plaintiff testified that sleeping, sitting in a car, and walking cause him back pain that then shoots down his legs.  AR 42, 55-57.  He testified that standing and sitting also cause pain.  AR 57-58.  He testified that his average daily pain is a "7" (presumably on a scale of 1 to 10), but that marijuana use reduces it to a "6."  AR 60.  He also testified that he suffers from pain in his neck, arms, and hands.  AR 64.

At the hearing, Plaintiff's counsel also examined the VE about Plaintiff's hypothetical limitations.  The VE had already testified that a person with hypothetical limitations described by the ALJ (effectively, Plaintiff), could not return to Plaintiff's past work, but could perform other jobs in the national economy.  AR 66-67.  Specifically, the VE testified that a person with those hypothetical limitations could work as an office helper (Dictionary of Occupational Titles ("DOT"): 239.567-010), routing clerk (DOT: 222.687-022), and cashier II (DOT: 211.462-010).  Nationwide, there are 14,300 office helper positions, 104,000 routing clerk positions, and 571,000 cashier II positions available.  AR 67.  Under examination by Plaintiff's counsel, the VE then testified that a person with those same hypothetical limitations, but who would miss one hour of work per day or three days of work per month, could not be employed in the competitive economy.  AR 67-68.

////

### B. The ALJ's Reasoning

As noted above, the ALJ determined that Plaintiff could perform "light" work, with several other limitations:

> [T]he claimant can lift and carry 25 pounds occasionally and frequently. He can sit, stand or walk for 6 hours in an 8-hour workday. He can occasionally climb ladders, ropes or scaffolds. He can frequently climb ramps and stairs. He can frequently balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to extreme cold, vibration and work hazards. He is unable to reach overhead with the dominant right upper extremity.

AR 20-21.

In making that RFC determination, the ALJ cited numerous portions of the medical treatment record and explained why she was discounting other portions of the record that suggested a more restrictive RFC or additional limitations. While the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 21.

The ALJ first reviewed the opinions of "treatment experts" and the "objective evidence," concluding that Plaintiff's claimed

> symptoms and limitations are undercut by evidence of improved symptoms with medication and repeatedly normal physical examinations throughout the period at issue. As stated, examinations revealed consistent evidence of normal gait, normal strength, normal motor function, normal coordination and normal sensory testing. Thus, although the claimant has severe limitations, he remains capable of modified light work.

AR 23. The ALJ then explained that Plaintiff's "allegations are inconsistent with the history of treatment." That history shows "conservative care for his severe impairments, consisting primarily of medication and physical therapy." AR 23. As the ALJ found, "[o]ne would expect aggressive care throughout the period at issue given the allegations." AR 23. Absent an "alternative rationale" for this relatively conservative course of care, which Plaintiff did not offer, the ALJ found "the history of care suggests the severe impairments are not disabling as alleged." AR 23. Finally, the ALJ found Plaintiff's activities of daily living, as reported to treating physicians, to be inconsistent with the claimed severity of his impairments. AR 23. Those

reported activities included "sitting, standing and walking for prolonged periods and completing light household chores," among other activities. AR 23.

The ALJ specifically discounted the opinion of Dr. David Kyle, D.O., Plaintiff's treating physician.[1] Dr. Kyle opined that beginning in or around July 2021, Plaintiff had the following functional limitations: occasionally lift 10 pounds; sit, stand, and/or walk less than one hour in an 8-hour workday; alternate between sitting and standing every 30 minutes; occasionally grasp, finger and reach with the left upper extremity; and rarely grasp, finger and reach with the right upper extremity. AR 24. Dr. Kyle also opined that Plaintiff will frequently face interrupted concentration and attention, will need work breaks every 30 minutes, and will miss work more than three times per month. AR 24. The ALJ found these opinions "not persuasive" because they were "not supported by ample evidence" and "not consistent with treatment reports and objective evidence." AR 24. The ALJ found Dr. Kyle's limitation to lifting 10 pounds occasionally is inconsistent with "evidence of 5/5 muscle strength and full motor function" documented by other medical providers. The ALJ further found that Dr. Kyle's "extreme sitting, standing and walking limitations are inconsistent with normal gait, motor function, normal coordination and normal sensory testing" documented by other medical providers. AR 24 (citing treatment records beginning at AR 828). The ALJ also found Dr. Kyle's opinions inconsistent with Plaintiff's own reports to other medical providers that he is capable of sitting, standing, and walking "for prolonged periods and completing household chores." AR 24 (citing treatment records beginning at AR 402).

Finally, the ALJ explained why she credited the RFC and limitations (with some modifications) proposed by the state agency medical consultants. The ALJ found their opinions "consistent with treatment reports and objective evidence," including "evidence of normal gait, normal motor function, normal coordination and normal sensory testing." AR 24.

////

////

---

[1] Dr. Kyle's treatment records begin at AR 860-870.

### C. Medical Opinion Evidence

An ALJ must evaluate the persuasiveness of medical source opinions by considering prescribed enumerated factors. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). The "most important factors" are "consistency" and "supportability." *Id*. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"); 404.1520c(c)(1), 416.920c(c)(1) ("[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be"). "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id*. § 404.1520c(b)(2)." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). As in other areas of ALJ decision making, an ALJ's determination on medical opinion evidence will be upheld if supported by substantial evidence. *See id*. at 793. "Where [medical opinion] evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id*. at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

Plaintiff advances several arguments as to the medical opinion evidence.[2] Plaintiff first objects to the ALJ "grouping together opinions from Mr. Perez's workers' compensation physicians into one evaluation." ECF No. 11 at 14; *see also* ECF No. 17 at 4 ("[T]he ALJ grouped together opinions from Mr. Perez's workers' compensation physicians into one evaluation."). This argument is unclear. The portion of the ALJ's decision concerning the workers' compensation physicians includes a detailed discussion of their evaluations. AR 22-23. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

---

[2] To the extent any medical provider opined that Plaintiff is "disabled" or meets a legal definition of "disability," such opinion is not entitled to "any special significance" because it constitutes an "opinion on issues reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)(1), (3); 416.927(d)(1), (3). The ALJ properly ignored such opinions because they encroached upon the responsibility of the agency to make the disability determination. *See* AR 23, 883.

thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998)).

Plaintiff's more substantive complaint about the workers' compensation-related evaluations concerns Dr. D. Michael Hembd's findings of "limitation in [Plaintiff's] ability to flex as well as extend his lower back." ECF No. 11 at 14. Nowhere does the ALJ specifically address these flexion/extension limitations. But Plaintiff does not explain how those precise conditions undermine the portions of the medical opinions that the ALJ did credit. AR 23 ("consistent evidence of normal gait, normal strength, normal motor function, normal coordination and normal sensory testing"). Nor does Plaintiff explain how those precise conditions would change the RFC, given that the ALJ concluded that Plaintiff could perform only light work, with certain other limitations.³ "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quotations omitted).

Plaintiff also argues that the ALJ erred in discounting Dr. Kyle's opinions by failing to engage in supportability analysis and botching the consistency analysis. As to supportability, Plaintiff reasons that Dr. Kyle adequately supported his opinions, with reference to Plaintiff's lower back and sciatic pain and a "pending" MRI, which ultimately showed a variety of spinal issues. ECF No. 11 at 15-16 (citing AR 863-64 & AR 870). However, as Defendant points out, that MRI from December 2021 "actually found that there was no interval change since the prior comparison MRI of April 5, 2019 that was considered" by the medical sources that the ALJ credited. ECF No. 16 at 10 (citing AR 400-401 & 869-870). The ALJ elsewhere thoroughly explained why she credited other medical source opinions and also specifically explained why she did not credit Dr. Kyle's opinions. AR 23-24. Even if is the ALJ's evaluation of the supportability of Dr. Kyle's opinion is "susceptible to more than one rational interpretation, it is

---

³ To the extent that there may be some potential tension between Plaintiff's flexion/extension limitations and the RFC's allowance for occasional "climb[ing of] ladders, ropes or scaffolds" and frequent "climb[ing] ramps and stairs," Plaintiff did not develop that line of argument either at the ALJ hearing or in the instant action.

the ALJ's conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch*, 400 F.3d at 679).

As to consistency, Plaintiff posits that the ALJ engaged in a "selective reading of the record," by referencing Plaintiff's full strength and motor function and other functional capabilities and ignoring MRI results from January 2021. *Id.* at 16. However, "[a] conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir 2001)). Moreover, it is not clear that Dr. Kyle's opinions are supported by the MRI results. Other medical providers, when reviewing Plaintiff's MRI results, did not find the same extreme limitations that Dr. Kyle found. It was not error for the ALJ to credit those other medical providers' conclusions about the MRI results—which hardly speak for themselves and require expert interpretation—rather than Dr. Kyle's conclusions.

Plaintiff also states that Dr. Kyle's sit/stand limitations are consistent with Dr. Hembd's earlier suggestion—in 2019—that plaintiff could only stand for one hour at a time. *Id.* at 17 (citing AR 387, 392, 397). However, that critique is insubstantial. Dr. Hembd's opinion that Plaintiff could only stand for an hour <u>at a time</u> does not necessarily support Dr. Kyle's opinion that Plaintiff could only stand for <u>an hour during an entire day</u>.

Finally, relying on *Destefano v. Kijakazi*, No. 2:22-cv-1338 DB, 2023 U.S. Dist. LEXIS 166357, at *16-17 (E.D. Cal. Sep. 19, 2023), Plaintiff argues that the ALJ's rejection of Dr. Kyle's opinion as inconsistent with his activities of daily living "is woefully inadequate." ECF No. 11 at 17. In *Destefano*, the ALJ rejected a treating physician's opinion without citation to the record and with only a passing and summary explanation. By contrast, in Plaintiff's case the ALJ provided several reasons why Dr. Kyle's opinions were rejected as "not persuasive," including specific citations to record evidence. In sum, substantial evidence supported the ALJ's determinations drawn from the medical evidence.

////

////

11

### D. Clear and Convincing Reasons to Discount Subjective Statements

Plaintiff argues that the ALJ failed to provide sufficient reasons for not crediting Plaintiff's description of the severity of his limitations. ECF No. 11 at 19-22. Evaluating a plaintiff's subjective testimony is a two-step process: First the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.... In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the asserted pain or fatigue itself is not required. *Id.* (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." *Id.* (internal citations omitted).

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In weighing a claimant's credibility, an ALJ may consider, among other things, inconsistencies either in the claimant's testimony or between his testimony and conduct, claimant's daily activities, his work record, and evidence from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Id.* at 959.

The ALJ gave three reasons for discounting Plaintiff's subjective symptom testimony. AR 21-23. First, the ALJ found that Plaintiff's testimony about the intensity, persistence, and limitations of his symptoms were "inconsistent with treatment experts and objective evidence." AR 22. The ALJ then discussed in detail MRIs, X-rays, and clinical findings that often showed normal gait, normal strength, and normal range of motion. AR 22.

|   |   |
|---|---|
| 1 | The second reason the ALJ gave was that Plaintiff's allegations were inconsistent with the |
| 2 | history of conservative treatment. AR 23. The ALJ noted that Plaintiff's care had consisted |
| 3 | "primarily of medication and physical therapy." AR 23. The Ninth Circuit has characterized |
| 4 | "physical therapy and the use of anti-inflammatory medication" as "conservative treatment." |
| 5 | *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008). Ninth Circuit further stated that |
| 6 | a favorable response to conservative treatment can undermine a claimant's reports of disabling |
| 7 | pain. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously |
| 8 | indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony |
| 9 | regarding the severity of an impairment."). |
| 10 | Third, the ALJ found Plaintiff's symptom testimony inconsistent with his activities of |
| 11 | daily living. AR 23. The ALJ referred to reports of daily activities in the medical records that |
| 12 | were inconsistent with Plaintiff's symptom testimony at the hearing. AR 23. The ALJ referred to |
| 13 | three medical exhibits, those included reports that Plaintiff could exercise, was increasing |
| 14 | walking, and able to lift up to 30 pounds. AR 385. The records further stated: "Patient is able to |
| 15 | function well with the help of medications. The medications are well tolerated without any side |
| 16 | effects and allow to do the Activities of Daily Living such as sitting, standing, and walking for |
| 17 | prolonged periods of time. They are able to do light household chores." AR 404. |
| 18 | Plaintiff argues that the ALJ erred in finding that Mr. Perez's conditions improved with |
| 19 | treatment, citing a procedure in September 2021 to address a complex fracture of Plaintiff's right |
| 20 | clavicle.[4] ECF No. 11 at 20 (citing AR 858). However, the ALJ acknowledged this procedure in |
| 21 | discussing Plaintiff's impairments. AR 22-23. And the ALJ specifically accounted for the |
| 22 | limitations Plaintiff's clavicle injury caused by including in the RFC the following specific |
| 23 | limitation: "He is unable to reach overhead with the dominant right upper extremity." AR 21. |
| 24 | The ALJ did not err by acknowledging and incorporating Plaintiff's clavicle injury into the RFC |

---

[4] The record indicates that Plaintiff injured his clavicle in 2020 while driving a "miniature motorbike" or "dirt bike" in August 2020 (AR 82, 1058), some 18 months after his alleged disability onset date. The ALJ did not comment on the apparent inconsistency between the asserted extent of Plaintiff's back- and hip-related limitations and riding a miniature motorbike/dirt bike.

while discounting the severity of Plaintiff's other symptoms and limitations.[5]

Plaintiff also argues that the ALJ erred in finding his subjective testimony inconsistent with his daily activities. As Defendants argue, "[c]ontrary to Plaintiff's hearing testimony that he was very limited in his ability to sit, stand, and walk, the ALJ found that during the relevant period records indicated that Plaintiff was capable of activities of daily living, such as sitting, standing and walking for prolonged periods and completing light household chores (AR 23 citing 372-440; see e.g. 382, 404)." ECF No. 16 at 6. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). The ALJ could reasonably have found Plaintiff's activities of daily living as reported to medical providers inconsistent with his testimony at the hearing that he was more limited. "It is not the court's role to 'second-guess' an ALJ's reasonable interpretation of a claimant's testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (internal citation omitted). The ALJ's decision to discount Plaintiff's claims about the extent and severity of his limitations was supported by specific, clear and convincing evidence.

## VI. CONCLUSION

For the reasons set forth above **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for summary judgment (ECF No. 11) be DENIED, the Commissioner's cross-motion for summary judgment (ECF No. 16) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written

---

[5] Plaintiff takes issue with the ALJ's determination that Plaintiff pursued "conservative" rather than "aggressive" care for "his severe impairments" following the procedure to address his clavicle fracture. ECF No. 11 at 21; AR 23. The ALJ noted that Plaintiff's care in that period "consist[ed] primarily of medication and physical therapy." AR 23. It appears this conclusion is supported by the record. AR 23, 858-859, 888-892, 902-903, 931-933, 978-985, 1051, 1057-1059. As noted above, the Ninth Circuit has characterized "physical therapy and the use of anti-inflammatory medication" as "conservative treatment," and affirmed that favorable responses to such treatment can properly be found to undermine claims of disabling pain. *Tommasetti*, 533 F.3d at 1039-1040. In any event, the ALJ accounted for Plaintiff's clavicle facture in the RFC.

objections with the court and serve a copy on all parties.  *Id.*; *see also* Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: April 16, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE